OPINION
In this accelerated calendar case, submitted on the record and the briefs of the parties, appellant, Bradford Gill, appeals from the judgment of the Geauga County Court of Common Pleas entered on May 25, 2000. After a jury trial, a verdict was rendered in Gill's favor for $1,000. Gill had alleged special damages of $5,722. The following facts are relevant to a determination of this appeal.
On October 21, 1997, appellee, Nicholas Wolf, negligently rear-ended Gill's car while they were driving on South State Street in Middlefield Village, Ohio. Wolf's liability is not in dispute. Wolf testified that the traffic conditions were "stop and go," and that he was travelling between twenty-five and thirty-five miles per hour when he realized Gill was stopped in front of him and applied the brakes, albeit too late. Wolf estimated the impact speed was around fifteen miles per hour. Gill did not require emergency medical services. Upon being asked by the investigating police officer if he wanted to go to the hospital, Gill declined to go. However, Gill did go to the emergency room the following day, October 22, 1997, at approximately 11:20 p.m.
The issue in the trial was the amount of damages. Gill claimed special damages in the amount of $5,722. This total comprised of three elements. Gill submitted a chiropractor's bill for $3,890. Gill claimed lost wages in the amount of $902. The balance of approximately $950 consisted of several expenses including the cost of the emergency room visit on October 22, 1997.
Gill began seeing a chiropractor approximately two months after the accident, on December 17, 1997, and continued up to the week of the trial. Initially, Gill went frequently. As time progressed, the amount of visits declined. Gill worked the 3:00 p.m. to 11:00 p.m. shift for a company called Technical Air Control. Gill's claim for lost wages consisted primarily of time he claimed he took off work to visit the chiropractor.
During the cross-examination of Gill at trial, the following colloquy occurred:
 "DEFENSE COUNSEL: Isn't it true that you hired your attorney in November of '97 before you ever went to Dr. Hunkus?
"PLAINTIFF'S COUNSEL: Objection.
"THE COURT: Sustained.
"DEFENSE COUNSEL: Side-bar, your honor?
"THE COURT: Please.
 ------------------------------------------ (Side-bar conference had off the record out of the hearing of the jury.)
------------------------------------------
 "DEFENSE COUNSEL: Mr. Gill, didn't you hire your lawyer before you ever went to see Dr. Hunkus?
"PLAINTIFF'S COUNSEL: Objection.
"THE COURT: Sustained.
 "DEFENSE COUNSEL: Mr. Gill, when did you first hire your lawyer? When did you first contact a lawyer about this accident?
"PLAINTIFF'S COUNSEL: Objection.
"THE COURT: Overruled.
"PLAINTIFF: In November.
"DEFENSE COUNSEL: Thank you. Of 1997?
"PLAINTIFF: Yes.
 "DEFENSE COUNSEL: Thank you. Wasn't it Attorney Arbie who referred you to the chiropractor?
"PLAINTIFF: No."
In closing argument, one line of defense counsel's argument suggested that Gill's claimed damages were specious, pointing out that Gill hired a lawyer before seeing the chiropractor, and that the chiropractor made "new findings" (of injury). The jury returned a verdict in favor of Gill, finding damages in the amount of $1,000. From this judgment, Gill timely filed his notice of appeal.
In his sole assignment of error, Gill argues that the time and date a personal injury plaintiff first contacts their attorney is privileged and, thus, inadmissible evidence, and the admission of this fact into evidence was prejudicial error justifying the grant of a new trial. Gill is incorrect.
Privileged communications are governed by R.C. 2317.02, which states, in relevant part, "[t]he following persons shall not testify in certain respects: (A) An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client * * *." The attorney-client privilege is based on the premise that confidences shared in the attorney-client relationship are to remain confidential. State ex rel. Thomas v. Ohio State Univ. (1994),71 Ohio St.3d 245. For that reason, the attorney-client privilege applies to communications between attorneys and their clients pertaining to the attorney's legal advice. State ex rel. Beacon Journal PublishingCo. v. Bodiker (1999), 134 Ohio App.3d 415, 424, citing Thomas at 249.
The Supreme Court of Ohio has held that "communications made to [an] attorney during preliminary conferences prior to the actual acceptance or rejection by the attorney of the employment are privileged communications." (Emphasis added.) Taylor v. Sheldon (1961),172 Ohio St. 118, paragraph one of syllabus. However, in In re Martin
(1943), 141 Ohio St. 87, the Supreme Court of Ohio qualified the privilege, making a distinction between facts that are derived via communication, and those which are within the attorney's own knowledge. The court stated:
 "Ordinarily, an attorney may properly be examined as to the existence of the relation of attorney and client between himself and his client, and as to the terms of that relation. Thus, he may be required to state his authority for conducting a suit, or for compromising a claim, as the granting of such an authority necessarily imports permission to disclose its existence. He may also be compelled to disclose the character in which his client employed him, whether as executor, trustee, or on his private account; where the relationship began and ended, and whether he was instructed by one person to follow the direction of another. * * * It is also well settled that an attorney may be examined as to his fee, the contract therefor, and the amount thereof, these matters being deemed to be facts within his own knowledge, rather than confidential communications." (Emphasis added and citations omitted.) Id. at 104-105.
The Tenth Appellate District applied Martin in State ex rel. BeaconJournal Publishing Co. The court stated that: "`[f]acts within [the attorney's] own knowledge, rather than confidential communications,' are not within the attorney-client privilege." Id. at 424, citing Martin. "Extraneous facts, such as the `[attorney's] fee, the contract therefor, and the amount thereof,' are not subject to the attorney-client privilege." Id.In the present case, the date of the initial meeting was a fact within the attorney's own knowledge, not derivative from a communication. Aside from the fact Martin states an attorney may be compelled to disclose when a relationship began, it also logically follows that if the existence of a relationship, the contract, the character of the employment, and the fee or amount thereof are all facts not subject to the privilege, that the date the contract was formed would also not be subject to the privilege.
Therefore, in the present case, the court properly allowed defense counsel to inquire when Gill first hired an attorney. The ultimate impact of this testimony is irrelevant to its admissibility. The weight of evidence and credibility of witnesses is for the trier of fact to discern. Appellant's assignment of error is without merit. The judgment of the trial court is affirmed.
 _____________________________________ PRESIDING JUDGE WILLIAM M. O'NEILL
CHRISTLEY, J., NADER, J., concur.